<u>UNITED STATES DISTRICT COURT</u>
<u>NORTHERN DISTRICT OF OHIO – WESTERN DIVISION</u>
<u>AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT</u>

I, Ronald Brotherton, Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), being duly sworn, hereby depose and state as follows:

## <u>INTRODUCTION</u>

1.      I am a TFO with the DEA and have served in this capacity since approximately January of 2019.  I am also a Detective with the Sandusky Police Department (SPD).  I have been with SPD since May, 2012.  I attended the Ohio Peace Officer's Training Academy (OPOTA) in Medina, Ohio and graduated from the Police Academy in 2012.  I am a certified Police Officer through the State of Ohio.  As a Task Force Officer with DEA, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1).

2.      I have received training and experience in interviewing and interrogation techniques, arrest procedures, search and seizure, narcotics, search warrant applications, and various other crimes.  In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies.  In the course of conducting these investigations, your affiant has been involved in the use of the following investigative techniques:  interviewing informants and cooperating witnesses, conducting physical surveillance, conducting short-term undercover operations, analyzing telephone pen register and caller identification system data, conducting court-authorized electronic surveillance including

1

the use of tracking devices, and preparing and executing search warrants which have led to the substantial seizure of narcotics, firearms and other contraband.

3.      I am familiar with the methods that drug traffickers use to conduct their business, including, but not limited to, their methods of importing and distributing controlled substances, their use of mobile telephones, computers and other electronic devices, their use of businesses, houses, and other facilities in which controlled substances are stored and meetings are conducted, and their use of numeric codes and code words to conduct their drug transactions. I am also familiar with drug traffickers' use of communications devices, and texting applications and programs on such devices to conduct their business, including, but not limited to, transmitting information regarding price, quantity, and transportation of controlled substances.

4.      The facts contained in this affidavit are based upon my personal knowledge, the investigation, and the observations of other investigating officers and agents.  All observations referenced below that were not personally made by me were relayed to me by individuals with reliable information concerning those observations.  This affidavit contains information necessary to support probable cause for a criminal complaint.  It is not intended to include each and every fact and matter observed by me or known to the government.  The facts and circumstances of the offense and subsequent identification of the suspect are listed below.

5.      This affidavit is made in support of an arrest warrant for Danny Lee JOHNSON for violations of 21 U.S.C. §§ 841(a)(1) and 846, Possession with Intent to Distribute, and Conspiracy to Possess and Distribute Cocaine, as well as 18 U.S.C. § 922(g)(1), Possession of a Firearm by a Felon (the "Target Offenses").

## **PROBABLE CAUSE**

6.    During the Spring and Summer of 2024, the DEA identified Danny Lee JOHNSON and Jarvis POOL as cocaine traffickers in the Sandusky, Ohio area.

7.    Agents obtained recordings of phone calls between JOHNSON and POOL.  On July 23, 2024, at 12:13 pm, JOHNSON and POOL had a conversation wherein POOL told JOHNSON that he beat up his "old girl," known based on the facts of this investigation as JASMINE Cherry, because JASMINE was upset that POOL was talking with "Bri", identified by law enforcement as BRYONIA Myers.  POOL told JOHNSON that JASMINE was "throw[ing] some shit at Rodney's car that got everything in it, bro."  JOHNSON clarified, "The merch?"  POOL replied, "Yeah."  POOL told JOHNSON that he "moved shit from the crib, like-like you feel me?"  JOHNSON stated, "Yeah."  POOL continued to explain the argument to JOHNSON and explained how JASMINE was throwing items at the car that contained "the merch."'  JOHNSON asked, "What, you had her (BRYONIA) holdin' it?"  POOL replied, "I'm – Yeah."

8.    JOHNSON and POOL continued their conversation with POOL explaining, "So this man got all this demonstration in his motherfuckin' car, bro."  POOL continued to argue with JASMINE in the background of the conversation and also tried to explain to JOHNSON that he "stopped fuckin' this bitch, though, like I told—look. Like I told her—listen…"  As POOL explained the situation to JOHNSON, JOHNSON asked, "What that all have to do with my merch?"  JOHNSON also stated, "You know this how we livin' and survivin'."  POOL continued explaining the situation to JOHNSON and stated, "I'm in a crisis with nowhere to go. I'm trying to get this little bitch (BRYONIA) to hold the merch. You have to go, man. That's what's in it…"  JOHNSON again stated, "This how we li-livin' and survivin.'"  POOL replied,

3

"Yeah, Man.  I ain't got, but I'm not fuckin' her, though, Cuddy."  JOHNSON stated, "No, I'm talking about your merch."  POOL stated, "Yeah."  JOHNSON stated, "Shit, I don't play no games like that."  POOL stated, "That was weeks ag-, Yeah, you gotta go man.  You have to go."  JOHNSON stated, "C'mon man.  Wrong person see that cuz, that's the rest of your life."  Towards the end of the same conversation, JOHNSON asked POOL, "You got everything up?"  POOL replied, "Yeah, hell yeah."

9.      On Monday, July 29, 2024, law enforcement served a search warrant at BRYONIA's residence, 1326 Carr Street, Upper, Sandusky, Ohio.  This address had been identified by law enforcement as a stash location utilized by POOL.  BRYONIA was the only occupant of the residence at the time of the search warrant being served.  As a result of the search, law enforcement located a soft insulated cooler bag in BRYONIA's bedroom.  Inside the cooler bag was one unopened kilogram package of suspected cocaine wrapped in brown and clear tape with a label of red rectangle with "KMX" in white lettering and the Kawasaki "K" logo along with the word "Kawasaki" below it, shown below:



Also located in the cooler bag was a gallon-sized plastic baggie that contained four chunks of suspected cocaine, each wrapped in clear plastic, weighing a total of approximately 530 gross grams, and a fifth section of cocaine wrapped in clear plastic, weighing approximately 144 gross grams.  The fifth section of cocaine was field tested and tested positive for the presence of cocaine.  Also located in the cooler bag along with the cocaine, was approximately 200 gross grams of suspected fentanyl, approximately 117 grams of suspected crystal methamphetamine, approximately 22 gross grams of suspected fentanyl pills, and approximately 178 gross grams of marijuana.  These items were seized by law enforcement and sent to a laboratory for analysis and weight confirmation.

10.     On Monday, July 29, 2024, at 4:35 pm, JOHNSON and POOL spoke on the phone regarding the search warrant served at BRYONIA's residence earlier this date. JOHNSON asked, "Ain't nothing over there?"  POOL stated, "Man, what! Is it?"  JOHNSON replied, "Oh my God."  POOL went on to explain, "I just came, I just came from over there earlier."  POOL stated, "That—man. Jas (JASMINE) ain't did that shit, bro."  JOHNSON told POOL, "Somebody know you over there."  JOHNSON told POOL that law enforcement would be going to other residences used by POOL.  Pool stated, "Yeah, ain't nothing in there, though. That's everything, bro."

11.     On Monday, July 29, 2024, at 5:58 pm, JOHNSON participated in a phone call with an incarcerated male referred to as "Pops." Your affiant is aware that "Pops" is a nickname utilized by Ladonte SKELTON.  During this conversation, JOHNSON was joined on the call by POOL and they spoke with SKELTON.  During the prison call, the three parties discussed and theorized that POOL's girlfriend, JASMINE, was to blame for the search warrant at BRYONIA's residence.  SKELTON asked POOL, "Yall-yall-yall-yall had a unders-, yall had a

understanding?"  POOL asked for clarification.  JOHNSON then stated, "Ride or die.  They

riding or dying?"  POOL replied, "I mean a motherfucker done said it numerous times. Like, you

know, all that."  JOHNSON stated, "Yeah."  POOL then stated, "I mean I had a whole

[Unintelligible], you know what I'm sayin'? I just been saying, let-let her tell her it. That's her

whole convo. I ain't, you know if something go bad, I—you know what I mean? You know, but

as far as her people, I mean I'ma – I'ma find a way to go, you know, grab her up, you know what

I'm saying? And go holler at her."  Later in the conversation, SKELTON stated, "That bitch

know she did that. It wasn't even, it—now ain't ain't no time, ain't no time…" JOHNSON

stated, "It-it ain't time to finesse."  SKELTON then stated, "…ain't no more time, yeah, ain't no

time to—."  POOL then stated, "Naw, I ain't talking about [Audio breaks] like I don't know

what's going on.  I ain't talking 'bout stay up under the – man, listen, bro."  SKELTON then

stated, "Ain't no rocking you to sleep, none of that shit. 'Man, bitch, get your shit and get your

motherfuckin' ass up outta here, bitch. I know what the fuck you did, bitch. Get out of here."

12.     On August 2, 2024, law enforcement served a search warrant at the residence of

JOHNSON, located at 117 W. River Road North, Elyria, Ohio.  During the service of the search

warrant, JOHNSON's girlfriend, Pasion MOORE, and three children ages twelve and under were

found inside the residence. JOHNSON was not present. Among other items recovered, agents

found a Smith & Wesson .40 caliber handgun bearing serial number HVB4750 and two

magazines loaded with ammunition and additional loose ammunition located within an empty

cardboard box for a breaker box in the basement of JOHNSON's residence.  Also, among the

items found and seized was a plastic sandwich baggy containing approximately 128 gross grams

of suspected cocaine and three empty kilogram wrappers that had been cut open. Each wrapper

consisted of brown and clear tape with a label of a red rectangle with "KMX" in white lettering

and the Kawasaki "K" logo along with the word "Kawasaki" below it.  These three-kilogram wrappers were the same as the full, unopened kilogram seized from BRYONIA's residence, as shown below:



 Additional kilogram inner-packaging materials were also found that contained suspected cocaine residue on them.  The suspected cocaine, kilogram wrappers and packaging materials were located in a white trash bag on the back of a cleaning caddy cart in the southwest corner of an exercise room on the first floor of the residence.  Also, inside of this trash bag was a digital scale with white powder residue, an open box of sandwich baggies, an open box of gallon size baggies, and an open box of baking soda.  Based on my training and experience, these items are consistent with the process of breaking down and preparing kilogram quantities of cocaine into smaller quantities for distribution.  The seized cocaine was field tested with positive indications for the presence of cocaine.

13.     JOHNSON was arrested. On August 2, 2024, at approximately 4:32 pm, JOHNSON made a phone call from Lucas County Jail to Derrius JOHNSON (hereinafter DERRIUS) that was monitored by law enforcement.  During this call JOHNSON told DERRIUS that law enforcement raided his residence.  DERRIUS asked JOHNSON about what was found during the raid.  JOHNSON stated, "I had a pistol.  That's it."  DERRIUS told JOHNSON that he heard people saying that law enforcement found "multiple keys" during the raid.  JOHNSON stated, "Hell no."  DERRIUS told JOHNSON that JOHNSON's "girl" told him that law enforcement found white powder or something.  JOHNSON stated, "Might have been some little shit but wasn't nothing in there though." JOHNSON and DERRIUS talked about "the gun" to which JOHNSON stated, "Oh yeah yeah that's all I had over there, I'm gonna keep one of them with as crazy as it is out here, shit."

14.     JOHNSON is prohibited from possessing firearms. Among other interactions with law enforcement, Defendant was convicted in 2010 of F3 Trafficking in Crack Cocaine with 1000 Feet of a School in the Erie County Court of Common Pleas in Case Number 2010-CR-118.

15.     On information and belief, Smith & Wesson does not, and has not, manufactured semi-automatic pistols in the State of Ohio.

(space intentionally left blank)

## CONCLUSION

16.     Based on the information set forth in this Affidavit, and my training and experience, I respectfully submit there is probable cause to believe that in or about July and August of 2024, in the Northern District of Ohio, DANNY LEE JOHNSON committed acts constituting violations of the Target Offenses.

_____
Affiant, Ronald Brotherton
Task Force Officer
Drug Enforcement Administration


Sworn to via telephone on this 5th day of
August, 2024 after submission by reliable
electronic means Fed.R.Crim.P. 4.1 and 41(d)(3)

_____
Honorable Darrell A. Clay
United States Magistrate Judge

9